RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE  8-29-07
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DORIAN TREVOR SYKES | CIVIL ACTION NO. 07-CV-1004 |
| VERSUS | JUDGE DRELL |
| FEDERAL BUREAU OF PRISONS, ET AL. | MAGISTRATE JUDGE KIRK |

REPORT AND RECOMMENDATION

Before the court is the *pro se* civil rights complaint of Plaintiff Dorian Trevor Sykes, filed pursuant to the provisions of 42 U.S.C. §1983 and Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics[1]. Plaintiff is an inmate in the custody of the Federal Bureau of Prisons ("BOP") and is currently incarcerated at the U.S. Penitentiary in Florence, Colorado. However, at the time of filing suit he was incarcerated at the United States Penitentiary in Pollock, Louisiana ("USP-P"). He complains of acts that allegedly took place at USP-P. Plaintiff seeks an award of one hundred million dollars in damages for cruel and unusual punishment; he has named as defendants the Federal Bureau of

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983. See Zuspann v. Brown, 60 F.3d 1156, 1157 n. 2 (5th Cir.1995).

Prisons ("BOP"), Warden Frederick Menifee, Rick Marquez, and Henry Bowers.

This matter has been referred to the undersigned for review, report, and recommendation pursuant to 28 U.S.C. § 626 and the standing orders of this Court.

## STATEMENT OF THE CASE

Plaintiff complains that the defendants violated his right to be free from cruel and unusual punishment. He alleges that on May 24, 2007, while he was housed in the Special Housing Unit ("SHU"), the Special Operations Response Team was notified by Lt. Henry Bowers that an incident had occurred within the SHU. Specifically, Bowers was notified that an inmate had barricaded himself inside his cell, using the bunk to block the entrance of the door.

Because of the incident, Plaintiff and other SHU inmates were ordered to pack up their personal property and submit to handcuffs. Plaintiff was then escorted down the stairs to a multipurpose cell across from the guard station. Inside the cell were two other SHU inmates, Tommy Jones and Thomas Harris, who were also in handcuffs.

Officer Logan informed Plaintiff that he had been removed from his cell because they needed extra bed space, and Plaintiff could not be around the incoming inmates because Plaintiff was a "protective custody" inmate. [Doc. #1-3, p.1] Officers Logan and Bowers informed Plaintiff, Jones, and Harris that they would be sleeping in the multi-purpose cell for five nights, until Tuesday,

May 29, 2007, at which time the inmates temporarily occupying their cells would be leaving USP-P. Plaintiff provides that Jones and Harris had been sleeping in observation cells; but, by policy, those cells would be needed for the inmates who had barricaded their cell doors.

Plaintiff complains that he, Jones, and Harris were left in the multipurpose cell with their hands cuffed for over four hours "because [they] asserted [their] right to protective custody." Plaintiff claims that he, Jones, and Harris finally agreed to let the officers remove their handcuffs because they were told they would not be fed until they complied.

Plaintiff contends that he had to sleep with his mattress on the floor because there were no bunks in the multipurpose cell. He also complains that the cell had no running water, toilet, or shower; therefore, he, Harris, and Jones were provided a roll of tissue and garbage bags in which to defecate and empty gallon size bleach bottles to use as urinals. Plaintiff complains that (1) having to use these items (2) without any privacy, violated his constitutional rights.

On May 29, 2007, Plaintiff made a request for mental health services because he was having suicidal thoughts. Plaintiff states that Dr. Hughes from health services spoke with him that afternoon but "she took it for a game." Inmates Jones and Harris ultimately talked Plaintiff out of committing suicide that day.

3

Plaintiff contends that he received an incident report from Officer Craig stating that Plaintiff stayed in the multipurpose cell for several days because he refused to move to a regular cell. Plaintiff claims that the report was written to cover up the ill-treatment he received. According to Plaintiff, the report states that Plaintiff was ordered "to cuff up" so he could be moved to a cell with a shower and toilet, but that Plaintiff refused. Plaintiff claims that he did not refuse to be moved; rather, he simply asserted his right to protective custody. Plaintiff, Harris, and Jones were offered a two person cell in which they could stay until their cells were available again. However, according to Plaintiff, "we declined the offer because it's unconstitutional for 3 inmates to sleep in a tiny two man cell." [Doc. #1-3, p.9.]

Next, Plaintiff complains that the Captain attempted to starve him by instructing the staff to feed Plaintiff, Jones, and Harris "sack lunches" while the other inmates ate "hot tray lunches."

Based on the forgoing allegations, Plaintiff contends that his constitutional rights were violated from May 24, 2007, through May 31, 2007.

### Law and Analysis

For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. See Rhodes v. Chapman, 452 U.S. 337, 347

4

(1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Id. However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. Id. It is the "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998)(citing Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Even presuming that the conditions of the multipurpose cell were "so serious as to deprive Plaintiff of the minimal measure of life's necessities," Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)(quotation marks omitted), there are at least two additional hurdles to recovery under the Eighth Amendment. First, it must be determined whether forcing Plaintiff to endure the alleged conditions rises to the level of an Eighth Amendment violation, given that the inmates were released from the mutipurpose cell within one week. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether

5

the confinement meets constitutional standards. A filthy, overcrowded cell... might be tolerable for a few days and intolerably cruel for weeks or months.")

The second hurdle relates to the statutory requirement of a physical injury in order to recover for mental and emotional damages. Under § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The physical injury required by § 1997e(e) "must be more than de minimis, but need not be significant." Harper v. Showers, 174 F.3d 716, 719 (5th Cir.1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir.1997)).

Plaintiff has not alleged any physical injury. Although he claims that, by providing him with "sack lunches" rather than hot "tray meals", Defendants were attempting to starve him, such claims regarding the defendants' intent are conclusory and not supported by any other factual allegations. Plaintiff does not claim that he went without food; rather, he complains about receiving "sack" meals. Absent allegation of any physical injury, §1997e(e) precludes Plaintiff from recovering for his alleged emotional and mental injuries.

Plaintiff claims that he received "frivolous incident reports" during the time he was housed in the multipurpose cell. He does

6

not claim to have been convicted of these offenses or lost any good time credits based on the incidents. However, to the extent that he does claim that he lost good time or was otherwise wrongfully punished, he fails to state a claim for which relief can be granted under Heck v. Humphrey.[2]

Plaintiff is entitled to no relief as a matter of law. See Alexander v. Tippah County, Miss. 351 F.3d 626, 630-631 (5th Cir. 2003).

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of

---

[2] Prisoners cannot bring §1983 actions seeking damages based upon a "conviction" received in a prison disciplinary proceeding until such time as the "conviction" has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of *habeas corpus*, if a favorable judgment would "necessarily imply" the invalidity of the prisoner's "conviction." Heck v. Humphry, 512 U.S. 477, 486-487 (1994). A conviction for purposes of Heck analysis includes a ruling in a prison disciplinary proceeding that results in a change in the prisoner's sentence, including loss of "good time" credits. Edwards v. Balisok, 520 U.S. 641 (1997).

7

court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this 08 day of August, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE